FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

CHARLES J. MOSLEY, JR.,
   *Defendant-Appellant.*

No. 05-30488

D.C. No.
CR-04-00075-A-JKS

OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Chief Judge, Presiding

Argued and Submitted
July 26, 2006—Anchorage, Alaska

Filed October 11, 2006

Before: Alex Kozinski, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY

### Criminal Law and Procedure/Evidence

The court of appeals affirmed a judgment of the district court. The court held that evidence of three loaded handguns located at or near the entrance to a crack cocaine "stash house" sufficed to support a conviction of possession of a firearm in furtherance of a drug trafficking offense.

17511

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.

When police officers responded to a single-car accident involving appellant Charles Mosley, Jr., they found him in a nervous state, wandering outside his vehicle, sweating, and apparently under the influence of a controlled substance. Police discovered an outstanding warrant for his arrest and took him into custody. An officer discovered $2,300 in cash during a search of Mosley's person, and another officer found the plastic lid of a coffee grinder under his vehicle containing a residue that tested positive in a narcotics field test. Police officers obtained a warrant to search for the coffee grinder that matched the lid in Mosley's apartment, where they found drugs, a gun, and ammunition in plain view. The officers then obtained a broader search warrant and found cocaine, crack cocaine, assorted evidence of drug trafficking, and $7,000 in cash in Mosley's apartment. They also found three semi-automatic handguns at or near the entrance of the apartment, all loaded with ammunition and one fitted with a silencer. Mosley kept ammunition for several guns in both the kitchen and living area of the apartment. Based on evidence that the apartment was sparsely furnished and had no bed, the government argued during the ensuing prosecution that the apartment was not a home, but a "stash house," used as a base to manufacture and package crack cocaine and to store drugs, paraphernalia, and drug proceeds. At the close of the prosecution's presentation of evidence at trial, the district court denied Mosley's motion for acquittal of a charge of possession of a firearm in furtherance of a drug trafficking offense. Mosley was found guilty by a jury of both possession of crack cocaine with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense.

Mosley appealed.

[1] To prove that Mosley possessed a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A), the government had to demonstrate that (1) Mosley possessed crack cocaine with the intent to distribute, (2) Mosley possessed the firearms, and (3) Mosley's possession of the fire-

arms was "in furtherance" of the drug trafficking crime. [2] Evidence that a defendant merely possesses a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c). A conviction under the statute requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime, a question that turns on the intent of the defendant. [3] Sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying offense. [4] Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities. [5] Taken together, the facts in Mosley's case painted the picture of a drug dealer ready to threaten or fire upon any would-be intruder who might enter his base of operations to steal drugs or drug proceeds. The jury could infer that Mosley advanced his drug operation by using the guns to secure his merchandise and profits so he could continue his business. [6] The guns were strategically located at the entrance of Mosley's apartment. The jury could reasonably infer that a suspicious knock at the door, or a noise from outside, would send Mosley to the entrance of the apartment where he could grab a loaded gun. The evidence sufficed to support the conviction under § 924(c)(1)(A). The district court's judgment had to be affirmed.

---

### COUNSEL

Michael D. Dieni, Assistant Federal Defender, Anchorage, Alaska, for the defendant-appellant.

Jo Ann Farrington, Assistant United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

## OPINION

TALLMAN, Circuit Judge:

Charles J. Mosley, Jr. was found guilty by a jury of possession of crack cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count One), and possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A) (Count Two). He appeals his conviction.[1] We have jurisdiction pursuant to 28 U.S.C. § 3231, and we affirm.

### I

On May 16, 2004, officers from the Anchorage, Alaska, police department responded to a single-car accident involving Mosley. When the officers arrived at the scene they found Mosley wandering outside his vehicle; he appeared to be nervous, sweating, and under the influence of a controlled substance. Police discovered an outstanding warrant for his arrest and took him into custody. An officer searched Mosley's person and discovered $2,300 in cash.

Before towing Mosley's car, Officer Francis T. Stanfield

---

[1] Mosley raises three issues in this appeal: (1) whether the district court clearly erred in finding that an Anchorage police officer did not wilfully or intentionally misrepresent the outcome of a field test on an affidavit in support of a drug search warrant for Mosley's apartment; (2) whether there was insufficient evidence such that no rational trier of fact could have found that Mosley possessed firearms in furtherance of a drug trafficking offense; and (3) whether the district court abused its discretion in denying Mosley's motion for mistrial after the jury received improper evidence.

In this opinion we only address the second issue, which concerns whether the government presented evidence sufficient to support the charge of possession of a firearm in furtherance of a drug trafficking offense. We address the remaining two issues in a separate unpublished memorandum disposition filed simultaneously with this opinion.

---

searched the ground outside the vehicle. Under the car, Officer Stanfield found the plastic lid of a coffee grinder. The officer noticed a "brownish crystalline" residue with green flecks on the lid, which he believed to be methamphetamine and marijuana. Officer Stanfield retrieved a field test kit supplied by the Anchorage Police Department from his police vehicle. Both tests Officer Stanfield used returned a positive result. When questioned, Mosley admitted the coffee grinder lid was his. Officer Stanfield then applied for and received a warrant from a state court judge to search Mosley's apartment for the limited purpose of finding the coffee grinder that matched the lid.[2]

While searching the small apartment, officers found drugs, a gun, and ammunition in plain view. Officer Stanfield subsequently applied for a broader search warrant. During the second, more thorough, search of Mosley's apartment, police found two additional firearms, cocaine, crack cocaine, and assorted evidence of drug trafficking. Officer Stanfield described during his testimony what the police found during the two searches:

(1) On a small shelf just to the left of the front door, officers found a Beretta Model 950 BS—a .22-cal. semi-automatic handgun, loaded with bullets in the magazine and one in the chamber, with the hammer cocked and the safety on.

(2) In a closet to the left of the front door, officers found a black backpack holding two semi-automatic handguns—a Glock model 26, 9-mm. caliber, threaded for use with a silencer, with live rounds in the chamber and the magazine, and a Remington Rand Model 1911, .45-

---

[2] Mosley originally gave officers an incorrect apartment number. Before applying for the search warrant, Officer Stanfield identified the correct apartment.

cal. semi-automatic pistol with rounds in the magazine. White powder residue later confirmed to be cocaine was found on the backpack.

(3) In the kitchen, officers found the coffee grinder that matched the lid Officer Stanfield had found at the accident scene, a digital scale, a plastic container holding a large amount of what was later determined to be cocaine, packaging materials, a bag of what was later determined to be crack cocaine, approximately $7,000 in cash, ammunition for various firearms, and evidence of crack cocaine production.

(4) In the main living area, officers found ammunition for several different firearms.

The government argued during trial that Mosley's apartment was not a home, but a "stash house," used as a base to manufacture and package crack cocaine and as a place to store his drugs, drug paraphernalia, and drug proceeds. The government presented substantial evidence of crack cocaine production, along with bills and other papers found in the apartment that were addressed to Mosley at a different address. The evidence demonstrated that the apartment was sparsely furnished and had no bed and little furniture, although it contained several personal items and food. The government presented expert testimony to educate the jury on the connection between drug dealing and weapons and the significance of the firearms found near the entrance of a home or place of business. In his defense, Mosley argued that the apartment was not a stash house for drug production but was his home, and that the three firearms found at or near its entrance were simply a collection of guns used for sport or legitimate self-protection and not in any way related to running his crack cocaine business.

Following submission of the prosecution's evidence at trial, Mosley moved for acquittal on Count Two, arguing that there was insufficient evidence for any jury to convict him on this count. The district court denied the motion to dismiss under Federal Rule of Criminal Procedure 29 and submitted the case to the jury. The jury convicted Mosley on both counts. He timely appeals his conviction.

II

Because Mosley properly preserved his objection to the sufficiency of the evidence by making a timely Rule 29 motion at the close of the prosecution's case-in-chief, we review the district court's denial of a motion to acquit de novo. *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

In relevant part, 18 U.S.C. § 924(c)(1)(A) provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years.

[1] To prove that Mosley possessed a firearm in furtherance of a drug trafficking crime in violation of § 924(c)(1)(A), the government must show that (1) Mosley possessed crack cocaine with the intent to distribute, (2) Mosley possessed the firearms, and (3) Mosley's possession of the firearms was "in furtherance" of the drug trafficking crime. *See United States v. Mann*, 389 F.3d 869, 879 (9th Cir. 2004). Mosley contests

only whether the government's evidence sufficed to establish the third "in furtherance" element.

A

We first articulated what it means to possess a firearm in furtherance of a drug trafficking offense under § 924(c)(1)(A) in *United States v. Krouse*, 370 F.3d 965 (9th Cir. 2004). There, we reviewed a jury conviction on several drug and firearms violations, including a violation of § 924(c)(1)(A). *Id.* at 966. Police searched Krouse's apartment and found five high-caliber firearms, ammunition, 86.5 grams of cocaine, and almost 150 pounds of marijuana. *Id.* The police discovered the weapons in a dresser in Krouse's home office "within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia." *Id.* at 968 & n.4.

[2] Krouse argued that there was insufficient evidence to support his conviction under § 924(c)(1)(A), but we disagreed. *Id.* at 966. In analyzing the scope of the statute, we noted, "Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)." *Id.* at 967. We observed that supplementing evidence of possession with expert testimony that drug traffickers often carry firearms while doing business "presents a borderline case under § 924(c)." *Id.* Ultimately, we emphasized that a conviction under the statute "requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime," a question that "turns on the intent of the defendant." *Id.*

*Krouse* examined the eight-part test the Fifth Circuit uses to help determine whether there is sufficient evidence to support a conviction under § 924(c)(1)(A).[3] *Id.* (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000); *United States v. Suarez*, 313 F.3d 1287, 1292 (11th Cir. 2002)). We decided, however, that such a test was not helpful in all cases since it did not "distinguish possession for the promotion of drug trafficking from possession for other, perhaps legitimate, purposes." *Id.* at 968. This circuit has thus rejected a "checklist" approach to determining whether a firearm was possessed "in furtherance" of a drug trafficking offense. *Id.*

[3] Instead, we held in *Krouse*, that "sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying offense." *Id.* This does not necessarily mean that if a firearm is simply found somewhere on the same premises as other evidence supporting the bases for operation of a drug trafficking crime such a nexus is established. *Id.* Nor does the fact that a firearm is loaded or unregistered, by itself, establish a sufficient nexus between the crime and the gun. *Id.* These factors, however, may be taken into account among all other evidence adduced to establish a sufficient nexus. We concluded that because five high-caliber firearms were found in such close proximity to other evidence of drug trafficking, sufficient evidence existed to support Krouse's conviction under § 924(c)(1)(A). *Id.*

*Krouse* was a fairly straight-forward case. Many cases, including this one, involve more subtle factual situations, and whether certain facts support a conviction under § 924(c)(1)(A) is sometimes ambiguous under current circuit precedent. But, before we attempt to analyze the particular

---

[3]These eight factors are:

the type of drug activity involved, the accessibility of the firearm, the type of weapon, whether the weapon is stolen, whether the defendant legally possessed the weapon, whether it is loaded, the proximity of the weapon to the drugs, and the time and circumstances under which the gun is found.

*Id.* at 967 (citation omitted).

facts of this case, we look at *Mann*, the leading case in our circuit in which we determined that insufficient evidence existed to support a conviction under § 924(c)(1)(A).

B

In *Mann*, we held that, when guns were in a locked safe in a truck, the key to the truck was in a different location from the drugs, and the truck was not immediately accessible to the area where the defendants kept their drugs, there was an insufficient nexus between the guns and the underlying drug trafficking offense. *Id.* at 880. The defendants had set up a methamphetamine lab at a campsite. *Id.* at 872. When police searched the campsite, they found the lab, which consisted of a "sleeping tent" and a "cooking tent." *Id.* at 872-73. Police also searched the defendants' pickup truck, where they discovered a semi-automatic pistol inside a locked safe, a loaded "pen gun," ammunition, thirty pseudoephedrine pills, and other drug paraphernalia. *Id.* at 873. All evidence of drug trafficking was found in the tents. *Id.*

*Mann* held *Krouse* not controlling because of critical factual differences. Because the firearms in *Mann* were locked inside a safe with the key in the sleeping tent, the facts "render[ed] it more difficult to determine whether Appellants' possession was for the promotion of drug trafficking, or whether it furthered other, perhaps legitimate, purposes." *Id.* at 879. We declined to establish a rule that, if a particular type of gun is "inherently dangerous and generally lacking in usefulness except for violent and criminal purposes," then possessing such a weapon would satisfy the "in furtherance" element. *Id.* at 880. And we made clear that merely possessing a firearm contemporaneously with drug manufacture is insufficient to establish possession in furtherance of a drug trafficking offense, as to so hold would turn the crime into a strict liability crime. *Id.* Instead we held that there must be *some* specific evidence that the possession furthered the underlying offense. *Id.* However, the nature of the firearm and

the dual possession of firearms and drug trafficking paraphernalia are two more factors that may be considered in our analysis.

C

[4] More recently, in *United States v. Rios*, 449 F.3d 1009 (9th Cir. 2006), we held that insufficient evidence existed to support a conviction under § 924(c)(1)(A), where police found an unloaded sawed-off shotgun at the residence of a drug dealer, but found no drugs or drug trafficking paraphernalia at that residence. *Id.* at 1010-11. The court determined that, under *Krouse*, "[w]hether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities." *Id.* at 1012 (citing *Krouse*, 370 F.3d at 968).

In addition, we examined the legislative history of § 924(c)(1), which was amended in 1998 to include the "in furtherance" language. *Id.* at 1013. Specifically, we noted that possession in furtherance of a drug trafficking offense must include "more conduct under the statute than strict 'use' or 'carrying.' " *Id.* (quoting H.R. Rep. No. 105-344, at 6 (1997)). "[T]he government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity." *Id.* (quoting H.R. Rep. No. 105-344, at 12.)

In *Rios*, the government presented general evidence regarding the use of sawed-off shotguns and the common practice of drug dealers. *Id.* at 1014. An expert witness testified that drug dealers use firearms for protection and intimidation. *Id.* The government presented particularized evidence seeking to establish a connection between the firearm and the drug conspiracy at issue, but could not establish that the firearm was ever present at the location of the drug deals or other drug activities or that the dealer sold illegal drugs out of his resi-

dence. *Id.* at 1014–15. As in *Mann*, the connection between the underlying drug trafficking crime and the firearm was held to be too tenuous.

### III

Here, we are presented with a factual situation that falls between those in *Krouse*, *Mann*, and *Rios*. We hold that the evidence suffices to support a conviction under § 924(c)(1)(A). There can be little doubt that Mosley's apartment was the base of operations for crack cocaine production and packaging. The substantial sums of cash and the general lack of furniture and personal items support the government's theory that the apartment was a textbook example of a stash pad. To determine, however, whether the evidence sufficed to establish the requisite "nexus" between the three firearms and Mosley's illegal drug trafficking requires us to consider the totality of the circumstances based on the evidence submitted at trial.

Mosley's kitchen was littered with cocaine, crack, and drug paraphernalia used to package and distribute drugs, along with approximately $7,000 in cash. Police found three loaded semi-automatic handguns at or near the entrance, one of which was cocked. Although the safety of the cocked gun was activated, a rational jury could easily conclude it was ready for immediate use. Rounds of ammunition remained in the chambers of two of the handguns. Police discovered cocaine residue on the inside of the backpack that contained two of the weapons. One pistol was threaded for use with a silencer. Mosley kept ammunition for several guns in both the kitchen and the living area. The government presented general expert testimony about a typical drug dealer's use of firearms as well as the importance of Mosley's weapons having been stored next to the entrance, where any intruder looking to steal drugs or drug proceeds could easily be stopped.

**[5]** Taken together, these facts paint the picture of a drug dealer ready to threaten or fire upon any would-be intruder who might enter his base of operations to steal drugs or drug proceeds. It is not necessary for the government to prove that Mosley sold drugs at his apartment, as long as he manufactured and stored the drugs and drug proceeds at that location. The jury could infer that Mosley advanced his drug operation by using the guns to secure his merchandise and profits so he could continue his business. Additionally, although the jury could reasonably believe that the apartment was not a residence but solely a production base for crack cocaine, it suffices that the apartment *was* a production base, whether Mosley lived there or not.

**[6]** Mosley contends that the weapons were too far from the location of the drug manufacturing to establish a sufficient nexus. Although proximity of the firearms to the illegal activity is one factor to consider, we have never held that the drugs and guns must be in the same room. It is enough that the guns were strategically located at the entrance of Mosley's apartment. The jury could reasonably infer that a suspicious knock at the door, or a noise from outside, would send Mosley to the entrance of the apartment where he could grab the Baretta accessible on the adjacent shelf or retrieve a larger caliber weapon from the nearby backpack. The apartment is relatively small, and it would take only seconds to get from the kitchen to the entrance. We hold the evidence sufficed to permit any rational trier of fact to find beyond a reasonable doubt the essential elements of § 924(c)(1)(A).

We reiterate that this inquiry is fact specific, and, as in *Krouse*, we decline once again to adopt a checklist approach. There are simply too many possible factual scenarios likely to defy any test we may prognosticate based on so few cases in our jurisprudence. However, several factors may combine to provide a sufficient connection between the firearm and the underlying drug trafficking offense. Ultimately, in cases that present more complex, subtle factual scenarios, it is the total-

ity of the circumstances, coupled with a healthy dose of a jury's common sense when evaluating the facts in evidence, which will determine whether the evidence suffices to support a conviction under § 924(c)(1)(A). The record here supports the jury's decision.

## IV

The district court properly denied Mosley's motion to acquit on Count Two following the submission of the prosecution's evidence.

AFFIRMED.